**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**BHARATT DIAL,**

    **Plaintiff,**

**v.**                                                      **Case No. 8:08-cv-805-T-27TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## **REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was fifty-one (51) years of age at the time of his administrative hearing in June 2006. He stands five feet, two inches tall and weighed 170 seventy pounds. Plaintiff attended school in Guyana through the sixth grade.[1] His past relevant work was as a forklift operator, cargo handler, warehouse stockroom clerk, computer circuit board tester, and food packer/assembler. Plaintiff protectively applied for disability benefits in January 2004,

---

[1] Plaintiff testified that he attended school in Guyana through the sixth grade, but his Disability Report indicates third grade as the highest grade completed. (R. 84, 387).

alleging disability as of January 31, 2002, by reason of back injuries, numbness in his leg, high blood pressure, hypertension, and depression. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified he is unable to work due to pain in his lower back that sometimes goes into his neck, causes numbness in his right leg, and affects his knee. He cannot return to his prior employment due to absences from work caused by the pain he experiences.

Plaintiff last worked as a tester of computer circuit boards where he had worked since 1999.[2] He was laid off in early 2002 due to lateness and absenteeism. By his account, he missed work four to five times per month and was late two to three times per week. Prior to working for Jabil, Plaintiff was employed five years in New York with Federal Express as a cargo handler and occasional forklift operator. His duties included hand packing boxes and stacking the boxes. Plaintiff was injured on the job while employed with Federal Express.

As for daily activities, Plaintiff usually wakes by nine o'clock in the morning. Although he lives in a house by himself, his sisters come every day to bring him food and help with cleaning. He estimated that he prepares meals for himself three times per week, hand washes dishes once per day, sweeps or vacuums two times per month, does laundry and changes his sheets two times per month, goes to the grocery store three times per week, makes

---

[2]Plaintiff had one work attempt in 2002 as a home companion, but that lasted only two to three weeks.

his bed daily, reads the newspaper on the weekends, listens to the radio less than an hour per day, and watches television off and on about two hours per day. On bad days, Plaintiff lies down for two or more hours. On good days, he lies down for 30 to 45 minutes to rest. He has friends visit twice a week, and his sisters visit daily. He goes to church once a month if his friend takes him. On good days, he sits outside for a half hour and waters his plants; he estimated he does that three times per week. Plaintiff has a driver's license and drives three to four times per week to his sister's house, which is three blocks away. He also drives himself to doctors' appointments.

Plaintiff has difficulty sleeping and sleeps off and on. He estimated he gets a total of 8 hours of sleep in a 24-hour period. He takes medication twice per day. Dr. Diane Fernandez is his primary medical provider, and he has treated with her for over ten years. Plaintiff estimates he saw her 12 to 35 times in the year preceding his hearing. Plaintiff wants to see a mental health professional, but cannot because he has no insurance coverage. Plaintiff admits to thoughts of suicide a few years ago because of his pain. However, he has never been hospitalized for a suicide attempt.

Plaintiff testified that he can stand for 15 to 20 minutes before needing to sit, and can sit for a similar period of time before needing to move around. He estimated that he can only walk a block and a half before experiencing pain in his knee. Plaintiff is right-hand dominant; he did not have any problems at the hearing reaching out in front of himself or to the side. However, he testified that reaching overhead occasionally causes pain in his back, leg, behind his neck, and both arms. He denied any difficulty in holding onto or picking up pins, pencils, or eyeglasses. He testified that he can lift a gallon of milk repetitively without problem, but

3

then would later experience an aggravation of his back pain as a result. He denies having problems distinguishing between hot and cold. He can hold a pen and write a check without difficulty. He can dress and bathe himself. He has no problems with speech, although at times he is not in the mood to talk. He has difficulty hearing in one ear, but he has not been prescribed any type of hearing device. He owns a cellular telephone that he uses daily without difficulty. He has no problems turning his head from left to right or looking down at his shoulders. He wears reading glasses. He has never been diagnosed with asthma, emphysema, paralysis, or seizures.

      Plaintiff's primary complaint is pain in his lower back. It starts out as tingling and then gets hot, becoming worse and traveling down into his right leg causing numbness. He described the pain as continuous with the numbness lasting, at times, up to three days. If he has an attack during the night, he wakes up with a bloody nose and is also stiff. When he has the pain at night, he cannot sleep. Stooping and bending make the pain worse. Lying down and elevating his feet make the pain better. Additionally, medications help relieve the pain. At its worse, the pain is a ten on a scale from one to ten with ten being the most painful. Plaintiff also suffers from acid reflux and high blood pressure. He takes Norvec for his hypertension, which was prescribed by Dr. Patel. Plaintiff also saw Dr. Patel for depression, but now sees Dr. Libreros. Plaintiff testified to problems with headaches as well as pain in the back of the neck upon waking. The neck pain occurs three times per week. He also has severe pain in his right knee. The medications that Plaintiff takes make him drowsy. Plaintiff has depression, which causes him anxiety. His energy level is weak, and he has problems with memory and concentration. Plaintiff was involved in an automobile accident in

4

September 2002. Plaintiff testified that he was receiving workers compensation benefits in February 2004. As for exercise, Plaintiff tries to walk, but then it affects him later if he overdoes it. He enjoys playing checkers and listening to music. (R. 385-422).

Next the ALJ took testimony from Gerald Wili, a vocational expert ("VE"). The VE classified Plaintiff's prior relevant work as a material handler as heavy exertional, semi-skilled work and his work as an electronics inspector and a food tray assembler as light exertional, semi-skilled work. The ALJ posed a number of hypothetical questions to the VE. Pertinent to the issues raised on this appeal, the ALJ asked the VE to assume an individual of Plaintiff's age and work history with a marginal education who could lift, push, and pull twenty pounds occasionally and ten pounds frequently; walk, stand, stoop, and bend occasionally; and sit frequently, the VE opined that such individual could perform Plaintiff's past work as an electronics inspector and a food tray assembler. The VE testified that such individual could also perform jobs available in the regional economy including those of a cafeteria counter attendant, produce sorter, and a parking lot attendant. The ALJ took judicial notice of the fact that no jobs would be available if Plaintiff could not work an eight-hour day, forty-hour work week or would be absent more than two times per month. Upon this statement by the ALJ, counsel for Plaintiff did not inquire of the VE. (R. 422-28).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein

in detail. Pertinent to this appeal, the Plaintiff's last date insured was amended to be June 2003.[3] (R. 386).

By his decision of January 9, 2007, the ALJ determined that while Plaintiff has severe impairments related to back pain with occasional right radiculopathic symptoms and hypertension prior to his date last insured, he nonetheless had the residual functional capacity to perform a wide range of "light" exertional work.[4] Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform his past relevant work as an inspector/circuit boards and assembler, as well as other jobs available in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 21-28). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental

---

[3]The claimant must prove that his disability existed prior to the date he is last insured for disability benefits. If the claimant becomes disabled only after that date, his claim must be denied. *Ware v. Schweicker*, 651 F.2d 408, 411 (5th Cir. Unit A July 1981).

[4]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff demands remand and reversal on the following five complaints:

(1) Improper treatment of weight of physician opinions;

(2) Failure to recognize all impairments alone or in combination;

(3) Incomplete and improper hypothetical to the VE;

(4) Failure to utilize 11th Circuit pain standard; and

(5) Bias of the ALJ.

(Doc. 22).

By his first claim, Plaintiff urges the ALJ erred in failing to indicate the weight he afforded the opinions of treating doctors Harish J. Patel (neurologist), Jairo D. Libreros (neurologist), Jeffrey L. Tedder (orthopedic surgeon), and Dianne Fernandez (chiropractor). Citing *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987), Plaintiff urges that such error requires a remand at minimum. Because Patel, Libreros, and Tedder were treating doctors, Plaintiff argues their opinions were entitled to great weight. Given their (unspecified) opinions and because the evidence was that Plaintiff could not be around any machinery during the pertinent period, had to lie down for up to two hours a day due to pain, wore a

8

cervical collar for neck pain from his auto accident, and could do no prolonged sitting, standing, or walking, the remand should be for an award of benefits. (Doc. 22 at 1-3).

In response, the Commissioner notes that Plaintiff wholly fails to specify the opinions that the ALJ failed to consider or address and explain how they are inconsistent with the ALJ's decision and thus, the claim should be denied out of hand. In any event, the Commissioner urges the decision reflects that the ALJ adequately addressed Dr. Patel's opinions. As for Dr. Libreros, the Commissioner urges that he did not have a treating relationship with Plaintiff and thus his opinions were not entitled to any deference and, in any event, the decision reveals that his records were considered and discussed by the ALJ. As for Dr. Tedder, the Commissioner contends that even if he was not mentioned by name, the ALJ noted that Plaintiff developed knee pain in 2006, some three years after his date last insured. Thus, the reports of Dr. Tedder were considered but found to be irrelevant to the period under consideration. As for Dr. Fernandez, the chiropractor, the Commissioner notes that she is not an acceptable medical source under the regulations and her notes for the pertinent period of time were considered and discounted by the ALJ as limited and inconsistent. As for the reports of Dr. Tedder, the Commissioner urges that the ALJ's failure to address the chiropractor's (more concise and limiting) assessment made three years after the date last insured is not demonstrated to be error. (Doc. 24 at 5-11).

9

I find no error warranting a remand on this claim.[5] While Plaintiff is correct that in this circuit, when assessing the medical evidence, the ALJ must state with particularity the weight given the medical opinions and the reasons therefor and is required to accord considerable weight to treating physician opinions absent good cause for not doing so, *see Sharfarz,* 825 F.2d at 279-800, Plaintiff wholly fails to demonstrate an error requiring remand. A fair reading of the decision reflects that the relevant records and opinions of each of the three doctors and the chiropractor were considered by the ALJ. To the extent that any of the doctors gave an opinion and such was relevant to the period under consideration, from January 31, 2002 to June 30, 2003, the weight given the same is discernable upon a fair reading of the decision.[6] None of these care providers gave a complete functional assessment

---

[5]The claim is not well articulated by counsel. In the circumstances, the court is left to guess as to the particulars of this claim. This approach is barred by the court's scheduling order (Doc. 21), and under applicable case law, such perfunctory claims are waived. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n. 1 (11th Cir. 1998) (citing *Marek v. Singletary*, 62 F.3d 1295, 1298 n. 2 (11th Cir. 1995)).

[6]For example, Dr. Patel restricted Plaintiff from operating machinery and working or playing in dangerous places while under the influence of medications, having seizures, or lacking mental clarity. *See* (R. 120-36). Such was fairly accounted for by the ALJ in his residual functional capacity ("RFC") finding. *See* (R. 27). As for Dr. Libreros, it appears he saw Plaintiff on two occasions, once in 2002 and once in 2006. In both reports, most of the objective findings upon physical examination were within normal limits. (R. 215-18, 223-26). The report from 2002 reveals no opinions pertinent to Plaintiff functional capacity or any findings inconsistent with the RFC assessed by the ALJ. Further, there is no showing that the recommendations made in 2006 to avoid heavy lifting (more than ten pounds), extreme exercises, and frequent flexion or extension of the cervical/lumbar spine, are in any way relevant to the time period under consideration or that such would have altered the ALJ's RFC assessment. The ALJ's conclusion that the chiropractor's notes were limited and incomplete for the pertinent period is confirmed upon a review of the same. These notes reveal very little beyond vague complaints and do not contain opinions not accounted for by the ALJ. *See* (R. 315-61). The chiropractor's later assessment from June 2006 (R. 231-32), rendered three years after the date last insured, is not demonstrated to be relevant on this

for the period in question and, as the ALJ noted, given the absence of a thorough analysis and medical opinions by the treating doctors, the ALJ looked to the functional assessments by the state agency doctors who opined Plaintiff could do light exertional work. (R. 24). There is no error in this when the findings do not conflict with the evidence from treating and examining doctors. As the ALJ correctly found, there is no medical opinion in the record from a treating, examining, or evaluating physician that limited Plaintiff to less than light work at the time of his date last insured. (R. 25). Plaintiff has not demonstrated reversible error on this first claim.[7]

By his second claim, Plaintiff urges that the ALJ failed to recognize impairments related to his neck, as indicated by Dr. Libreros's notes; right leg weakness, as revealed by the chiropractor's notes; and fatigue, as mentioned by Dr. Libreros. Plaintiff argues that the ALJ cherry-picked the medical evidence to present an inaccurate picture of his medical

---

application. Lastly, while Dr. Tedder is not mentioned by name, the ALJ noted that Plaintiff developed knee pain in 2006, which is an obvious reference to Dr. Tedder's findings. *See* (R. 362-67). These findings are not demonstrated to be relevant on this application.

[7]To the extent Plaintiff suggests that the "treating physician" opinions the ALJ should have credited but did not were that he could not be around any machinery, had to lie down for up to two hours a day due to pain, wore a cervical collar due to neck pain, and could do no prolonged sitting, standing or walking, *see* (Doc. 22 at 3), review of the record reveals that those were not opinions proffered by treating physicians. Dr. Patel recommended "do not operate any machinery, work in or play at dangerous places, with dangerous surfaces or objects, in or around water while under the influence of medications, with history of seizures, or lacking mental clarity." *See* (R. 120-32). He did not opine that Plaintiff could not be around any machinery. The need to lie down for up to two hours a day is Plaintiff's testimony. From my review of the record, no treating (or otherwise) doctor expressed an opinion on the subject. As for wearing a cervical collar and an inability to do prolonged sitting, standing, or walking, Dr. Libreros noted those but only in recounting Plaintiff's statements. *See* (R. 221-22).

11

condition. Since the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments, and such was not done here, Plaintiff urges that a remand is required. (Doc. 22 at 4-6).

In response, the Commissioner notes first that, contrary to Plaintiff's claim, the ALJ credited Plaintiff with severe back pain with occasional right radiculopathic symptoms. As for the claim of a separate impairment of fatigue, such was based on the subjective complaints rather than the requisite medical findings. As for the alleged cervical impairment, the Commissioner notes that the regulations require that an impairment must be severe for a period of at least twelve months. Here, the medical record reveals the cervical sprain/strain experienced after the accident in September 2002 resolved and Plaintiff cannot claim such as a severe impairment. (Doc. 24 at 11-13).

Here, while Plaintiff states the proper standard, *see* 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984), he fails to demonstrate any error requiring the reversal he demands.[8] Concerning his neck complaints, it is correct that the Plaintiff appeared for examination by Dr. Libreros wearing a neck brace and on examination was diagnosed as having a cervical

---

[8]The mere fact that the ALJ failed to identify the neck injury or fatigue as a severe impairment is of no consequence at step two of the evaluation process. *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."). The ALJ's finding of a severe back and leg impairment satisfies the standard at this step. If Plaintiff is due relief on this claim, he must demonstrate functional impairments from the neck injury or fatigue not duly considered by the ALJ.

12

spine sprain/strain. However, Plaintiff does not demonstrate from that record or the other medical evidence that the condition lasted for a continuous period of twelve months and, more significantly, that it resulted in functional limitations not properly considered by the ALJ on or before his date last insured. Further, my independent review of the medical record reveals no error in the ALJ's review of the post-accident cervical sprain/strain. Treatment after the accident was primarily from the chiropractor, Dr. Fernandez. A review of her notes reflect early complaints by Plaintiff of neck pain after the accident but those complaints soon resolved and the chief complaint reported routinely related to back and leg pain or numbness. An x-ray or MRI study in October 2002 was unrevealing for serious cervical impairment. (R. 329). When the Plaintiff again sought treatment from his neurologist, Dr Patel, in October 2003, Plaintiff was again complaining of back pain and numbness. On examination, the neck was normal. (R. 121). Plaintiff is simply incorrect that the ALJ failed to consider the cervical spine sprain/strain and more importantly, he wholly fails to document limitations from the same. As for the alleged impairment of fatigue, the claim is entirely unsupported by medical evidence and is premised on subjective statements Plaintiff made to Dr. Librero. As set forth below, the ALJ has adequately addressed and discounted the subjective complaints. Finally, the Commissioner is correct that the ALJ credited Plaintiff with radiculating symptoms in his right leg on or before his date last insured and Plaintiff is simply incorrect in urging otherwise. In addressing the reports from Dr. Patel, the ALJ noted that he observed some weakness in the right leg and the EMG/Nerve Conduction Study in April 2002 was expressly discussed. The ALJ also noted subsequent improvement in Plaintiff's symptoms. In sum, the

13

impairment was addressed by the ALJ and Plaintiff fails to show any error in the ALJ's conclusions regarding the condition.[9]

By his third claim, Plaintiff argues that the ALJ's hypothetical questions to the VE were incomplete and failed to include any limitations regarding climbing ladders, ropes, or scaffolds or working near dangerous hazards such as unprotected heights or around moving machinery. Plaintiff also criticizes the ALJ for failing to investigate whether he would have to climb ramps or stairs or stoop, kneel or crouch or be around any moving machinery in his past jobs. He urges that the vocational conclusions by the ALJ are thus unsupported by substantial evidence. Further, Plaintiff urges that there should have been a finding of disability given his testimony that he needed to lie down for a couple of hours each day, four to five days a week, and the concession from the ALJ that such limitation would prevent all work. (Doc. 22 at 6-9).

In response, the Commissioner urges that there was no reversible error in the ALJ's failure to include any limitations for climbing ladders, ropes, or scaffolds or work near machinery or at heights or any limitations for frequent stooping, kneeling, crouching or crawling in questions of the VE because the Plaintiff's past work as an inspector and an assembler, as such are classified by the Dictionary of Occupational Titles ("DOT"), did not require climbing, work near moving machinery, or exposure to high places or more than occasional balancing, kneeling, crouching or crawling. Further, the other work identified by the VE, parking lot attendant, counter attendant, and produce sorter, did not require work

---

[9]Plaintiff's claim that the ALJ cherry-picked from the record is also not demonstrated.

14

within these limitations either. Because the ALJ may rely on the DOT in determining whether a claimant can perform his past work, the Commissioner contends that any error here is harmless. (Doc. 24 at 14-16).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, it is conceded that the ALJ failed to include any limitations in his hypothetical questions related to climbing ladders, ropes, or scaffolds or working near dangerous hazards such as unprotected heights or around moving machinery, nor did he include occasional postural limitations for balancing, kneeling, crouching, and crawling. While these limitations were part of the ALJ's RFC assessment of Plaintiff's capabilities (R. 24), they were not addressed with the VE. Where, as here, the decision reflects that the ALJ based his conclusion that Plaintiff could do his past work on the VE's testimony, the failure to include such limitations calls into question the ALJ's conclusion. Additionally, these limitations were not included in the questions leading to the ALJ's alternative findings that Plaintiff could do other work even if he was no longer capable of doing his former work. Nonetheless, I agree

15

with the Commissioner that the ALJ's error is harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); Fed. R. Civ. P. 61. Here the ALJ found that Plaintiff could perform his past relevant work as an inspector/circuit boards and assembler, both as performed previously and as generally performed in the national economy. (R. 26). As those jobs are generally performed, as described by the DOT, neither requires work which is inconsistent with the ALJ's RFC determination. *Compare* (R. 24) *with* DOT §§ 319.484-010 (food assembler), 726.684-022 (electronics inspector).[10] Since the DOT is a viable vocational source and may provide the ALJ with substantial evidence to support his decision, a remand would serve no useful purpose.[11]

By his fourth claim, Plaintiff urges that the ALJ erred by relying on his inconsistent statements regarding his level of education and his reported daily activities to discount his credibility. Plaintiff also faults the ALJ for not mentioning the Eleventh Circuit's "pain standard." (Doc. 22 at 9-10).

---

[10]The food assembler position is light exertional work that does not involve moving "mech" parts, vibration, exposure to high places, climbing, balancing, kneeling, crouching, or crawling and requires only occasional stooping. DOT § 319.484-010. The electronics inspector position has identical requirements except that it does not involve any stooping. DOT § 726.684-022.

[11]To the extent Plaintiff suggests a complete inability to stoop (Doc. 22 at 7), the record fails to support such. Furthermore, Plaintiff misstates Dr. Patel's recommended limitation pertaining to machinery. As set forth above, Dr. Patel did not state that Plaintiff could not be around any machinery; rather, he recommended that Plaintiff not operate any machinery while under the influence of any medications, if he had a history of seizures, or was lacking mental clarity. (R. 120-32).

In response, the Commissioner notes that these two grounds were not the only reasons cited by the ALJ for discounting Plaintiff's credibility. According to the Commissioner, the ALJ properly considered the record as a whole and noted that no medical provider rendered an opinion or assessment that limited Plaintiff to less than light work at the time of his date last insured. (Doc. 24 at 16-18).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). However, a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

Upon my reading of the decision, the ALJ discounted Plaintiff's credibility insofar as he claimed to be disabled from all work on or before his date last insured based on his consideration of the whole of the pertinent medical record as set forth in the decision and from the very accurate finding that no medical provider, treating, examining, or evaluating, had rendered an assessment limiting Plaintiff to less than light exertional work prior to his date last insured.[12] (R. 24-25). He also cited the Plaintiff's inconsistent reporting of three years and six years of schooling and daily activities as reported in 2004 and at the hearing in 2006. (R. 25). By my reading of this record, even if these latter inconsistencies are of little consequence, the medical records and opinions support the conclusion that Plaintiff was less than fully credible in his claim that he could to no work before his date last insured. Here, as above, Plaintiff fails to demonstrate any error in the RFC assessment of the ALJ or any limitations not properly included in that assessment.

Finally, Plaintiff claims the ALJ was biased as evidenced by some unspecified comments made by the ALJ in the prior hearing on that day, his rapid-fire questioning of the Plaintiff, and the fact that he cut off counsel when he attempted to question the VE. In counsel's view, Plaintiff was denied due process and equal protection and he seeks remand and award of benefits. (Doc. 22 at 10-12). In response, the Commissioner denies any bias and urges Plaintiff has demonstrated none. (Doc. 24 at 18-20).

---

[12]Contrary to Plaintiff's assertion, the ALJ clearly was aware of the governing standard because he cited the applicable regulation and SSA ruling and he properly applied it in this case. As such, the ALJ complied with this circuit's standard. *See Wilson,* 284 F.3d at 1226.

Due process requires a fair trial in a fair tribunal. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). "This applies to administrative agencies which adjudicate as well as to courts." *Id.* at 46-47 (citing *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973)). "Due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities." *Schweiker v. McLure*, 456 U.S. 188, 195 (1982). In analogous cases, the Court has indicated that the starting point is a presumption that the hearing officer is unbiased. The presumption may be rebutted by a showing of conflict of interest or "some other specific reason for disqualification," and the burden of establishing the disqualifying event or interest is on the party making the assertion. *Id*.

Here, Plaintiff fails to meet his burden. At the outset, it is worth noting that counsel on this appeal was counsel for Plaintiff at the hearing. Nowhere in the record does he raise this issue concerning the ALJ's bias. Whatever happened in the preceding hearing is not part of the record in this case. Were counsel truly concerned that the ALJ was possessed of a racial bias, the matter should have been timely raised with the ALJ. It was not. Similarly, counsel made no complaint that the ALJ was questioning the Plaintiff in an unfair manner. While there was need for occasional clarification, Plaintiff does not demonstrate that the points he sought to make were not permitted or were precluded by the manner of examination. As the Commissioner points out, counsel was given a fair opportunity to question his client and he did so at some length. As for the claim by counsel that he was cut off from questioning the VE by the ALJ, such is not adequately demonstrated either. The ALJ did interrupt Plaintiff's counsel at the outset of his questioning with a concession. Counsel made a statement referencing the RFC assessment of the chiropractor and a recent statement by Dr.

Libreros and Plaintiff's need to lie down, but when asked if he had "anything further," he answered in the negative. (R. 427). While counsel may have felt pressure from the ALJ to wrap up the proceeding, the record does not support that he was precluded from asking further questions or addressing the claim of bias.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
25th day of January 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record